**In re Gary CALLAWAY, Debtor.**

**Peter CALDARELLI, Plaintiff,**

v.

**Gary CALLAWAY, Defendant.**

**Bankruptcy No. 81–00709K.
Adv. 83–0603K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 2, 1984.

**342**

Herbert L. Ocks, Philadelphia, for plaintiff.

Robert Leather, Philadelphia, for defendant/debtor.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

This case reaches the Court on a complaint to determine dischargeability of a debt. The parties have submitted the case to the Court on briefs and a set of stipulated facts. The sole issue before the Court

---

is a legal one: whether the conduct of the defendant in driving an automobile while intoxicated, resulting in damage to property of another, constitutes willful and malicious injury of the type required to render a debt nondischargeable under § 523(a)(6) of the Bankruptcy Code. For the reasons stated herein, we find that the debt is nondischargeable.

The facts of this case are as follows:[1] On or about October 25, 1980, the defendant, Gary Callaway, while operating his automobile under the influence of alcohol, struck the unoccupied vehicle of the plaintiff, Peter Caldarelli. The plaintiff's car was legally parked in front of his home.

As a result of this incident, the defendant was convicted of driving "while under the influence"[2] in the Municipal Court of the City of Philadelphia on March 29, 1981. Although the defendant was accepted into a rehabilitation program, he was ordered to pay $3,892.43 in restitution to the plaintiff for failure to carry liability insurance on his automobile.[3] The defendant paid restitution in the amount of $300.00 to the plaintiff, leaving a balance due of $3,592.43 on the debt.

On February 27, 1981, the defendant filed a petition under Chapter 7 of the Code listing the plaintiff as an unsecured creditor for the balance due in unpaid restitution. On March 23, 1983, the plaintiff filed the instant complaint to determine dischargeability of the debt, alleging that the defendant struck his car while driving under the influence of alcohol, that the defendant inflicted willful and malicious injury on his property, and that, therefore, the debt should be declared nondischargeable.

Section 523(a)(6) of the Code provides that:

    (a) A discharge ... does not discharge an individual debtor from any debt—

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Rules of Bankruptcy Procedure.

2. Pa.Cons.Stat.Ann. tit. 75, § 3731 (Purdon 1977).

3. Pa.Stat.Ann. tit. 40, § 1009.104 (Purdon 1974).

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523.

The phrase "willful and malicious injury" was first interpreted by the United States Supreme Court in the context of federal bankruptcy law in the case of *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). The Supreme Court found that the defendant's conduct involving criminal conversation was sufficiently injurious to the husband's marital rights to constitute "willful and malicious injury" under section 17a(8) of the Bankruptcy Act. Thus, the debt was held to be non-dischargeable. In so holding, the Court broadly defined the phrase "willful and malicious injury" to include "wilful disregard" of what one knows to be his duty:

> In order to come within the meaning as a judgment for a wilful and malicious injury to person or property, it is not necessary that the cause of action be based upon special malice....
>
> In *United States v. Reed,* 86 Fed. 308, it was held that malice consisted in the wilful doing of an act which the person doing it knows is liable to injure another, regardless of the consequences; and a malignant spirit or a specific intention to hurt a particular person is not an essential element. Upon that principle, we think a wilful disregard of what one knows to be his duty, an act which is against good morals, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done wilfully and maliciously, so as to come within the exception.
>
> It is urged that the malice referred to in the exception is malice towards the individual personally, such as is meant, for instance, in a statute for maliciously injuring or destroying property, or for malicious mischief, where mere intentional injury without special malice towards the individual has been held by some

courts not to be sufficient. *Com. v. Williams,* 110 Mass. 401.

> We are not inclined to place such a narrow construction upon the language of the exception. We do not think the language used was intended to limit the exception in any way. It was an honest debtor, and not a malicious wrongdoer, that was to be discharged.

*Tinker v. Colwell,* 193 U.S. at 485, 24 S.Ct. at 508.

In subsequent cases under § 17a(8) of the Bankruptcy Act, some courts held that liabilities resulting from the bankrupt's driving while intoxicated were dischargeable.[4] *See, e.g., In re Rainey,* 1 B.R. 569 (Bankr.D.Or.1979); *In re Moya,* 3 B.C.D. 520 (Bankr.S.D.Cal.1977). However, the majority of courts, acting under the authority of *Tinker, supra,* held that damages for injuries caused by a defendant's drunk driving were non-dischargeable debts. *See In re Keenan,* 4 B.C.D. 208 (Bankr.N.D.Ga. 1977); *In re Irwin,* 2 B.C.D. 783 (N.D.Iowa 1976); *In re Eastman,* 1 B.C.D. 1211 (E.D. Tenn.1975); *Harrison v. Donnelly,* 153 F.2d 588 (8th Cir.1946); *Den Haerynck v. Thompson,* 228 F.2d 72 (10th Cir.1955).

Section 17a(8) of the Act has since been superceded by section 523(a)(6) of the Bankruptcy Reform Act of 1978, commonly referred to as the "Code". Although the language of § 523(a)(6) is almost identical to the language of § 17a(8), the terms "willful and malicious" are not defined by the Code. It has been left to each court to determine the guidelines for application of the exception found in § 523(a)(6). *In re Carey,* 35 B.R. 894 896 (E.D.Tenn.1983).

A leading commentator on the Code has summarized the meaning of the terms "willful and malicious" as follows:

> In order to fall within the exception of section 523(a)(6), the injury to an entity or property must have been willful and malicious. An injury to an entity or property may be a malicious injury within this provision if it was wrongful and

---

**4.** For a discussion of cases decided under the Act on this issue, *see In re Bryson,* 3 B.R. 593, 594–595 (Bankr.N.D.Ill.1980).

without just cause or excessive, even in the absence of personal hatred, spite or ill-will. The word "willful" means "deliberate or intentional", a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury. (Footnotes omitted.)

3 *Collier on Bankruptcy* ¶ 523.16(1) (15th ed. 1979); *see In re Schuck,* 27 B.R. 644,-645 (Bankr.M.D.Pa.1982).

This view is supported by the legislative history accompanying enactment of the Code. The House Report specifically refers to the intent of Congress to narrow the meaning of the phrase "willful and malicious" to deliberate, intentional conduct:

[P]aragraph (6) excepts debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph, "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902) [sic], held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977) *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6320–21.

Nevertheless, some courts continue to apply the standard set by the Supreme Court in *Tinker.* In a 1981 decision, one bankruptcy judge stated:

Legislative history is a helpful tool in determining the intent of the legislature where that intent is not clear. But, I fail to see how a statement in a report prepared for the assistance of Congress, usually by unidentified persons, can overrule decisions of the United States Supreme Court where almost the identical language was involved. In my opinion, *Tinker v. Colwell* ... is still operative and controlling.

*Credithrift of America v. Auvenshine,* 9 B.R. 772, 775 (Bankr.W.D.Mich.1981).

*See also Brawner v. Askew,* 22 B.R. 641, 642 (Bankr.M.D.Ga.1982); *Borg-Warner Acceptance Corp. v. Simmons,* 9 B.R. 62, 65 (Bankr.S.D.Fla.1981).

Currently there is a split of authority among bankruptcy courts on the issue of whether an indebtedness arising from an automobile accident caused by a debtor while intoxicated may be discharged. The defendant rests his argument on those cases holding that such debts are dischargeable, *see Marwell Trucking, Inc. v. Davis,* 26 B.R. 580 (Bankr.D.R.I.1983) (judgment for property damage caused by intoxicated debtor driving at safe rate of speed dischargeable); *Clair v. Oakes,* 24 B.R. 766 (Bankr.N.D.Ohio 1982) (conviction for vehicular homicide of intoxicated debtor, having alcohol blood content of 0.2485%, insufficient without further evidence to permit finding of willful and malicious injury to decedent); *Matter of Morgan,* 22 B.R. 38 (Bankr.D.Neb.1982) (debt dischargeable because no evidence suggested drinking driver intended to injure victim); *Williams v. Bryson,* 3 B.R. 593 (Bankr.N.D.Ill.1980) (debt dischargeable because reckless disregard does not equate to willful and malicious conduct), while the plaintiff rests his argument on those cases holding that such debts are non-dischargeable, *see In re Carey, supra,* (decided December 16, 1983); *In re Cloutier,* 33 B.R. 18 (Bankr.D.Maine 1983) (decided August 24, 1983); *In re Wooten,* 30 B.R. 357 (Bankr.N.D.Ala.1983) (decided June 6, 1983); *Long v. Greenwell,* 21 B.R. 419 (D.C.S.D.Ohio 1982).

Clearly, the trend in recent caselaw is to find debts arising from injuries caused by intoxicated drivers non-dischargeable under § 523(a)(6). We are inclined to support this view and adopt the analysis of the bankruptcy court in *Greenwell, supra,* which the District Court affirmed on appeal:

What is to be gleaned from this review is that Congress intended that it not be sufficient to classify an act as willful and malicious that it be one done for reckless disregard for consequences. An inten-

tional act is required. It is not, however, necessary to find that personal ill will existed in order for there to be a finding of willful and malicious injury. *In re Obermeyer*, 12 B.R. 26 (B.J., [Bkrtcy.] Ohio, 1981). In the case before us now, we hold that the voluntary drinking by defendant constituted an intentional act sufficient to support the conclusion that the injury caused by defendant was willful and malicious. That is, while the legislature meant to circumscribe the scope of the *Tinker* case, its holding that "willful and malicious" under the statute is satisfied where there is an intentional injury remains valid. Defendant's intentional drinking unleased the unbroken causitive [sic] chain which led to the injury of the plaintiff's vehicle. It will not avail defendant in his effort to avoid this result to argue that he did not know plaintiff prior to the accident and therefore the injury could not have been intentionally caused. One is responsible under the law for the natural outcome of his actions.

21 B.R. at 421.

The decision of the *Greenwell* court was followed by the decision in the case of *Wooten, supra,* where a pregnant woman was injured when the debtor, while driving under the influence of alcohol, lost control of his car, ran up onto a sidewalk and hit the woman. Neither the woman nor her baby were permanently injured. Nevertheless, the court declared the debt non-dischargeable, quoting remarks made by Senator DeConcini on the Senate floor in support of his amendment to permanently resolve the conflict in authority on the issue of bankruptcy discharges afforded to debtors who drive while intoxicated and cause injury and damage to persons and property:

Today there exists in the bankruptcy statute an unconscionable loophole which makes it possible for drunk drivers or others who have acted with willful, wanton, or reckless conduct and who have injured, killed, or caused property damage to others to escape civil liability for their actions by having their judgment

debt discharged in Federal bankruptcy court. This loophole affords opportunity for scandalous abuse.

. . . .

Bankruptcy was never meant to be a shield behind which drunk drivers, and others who have acted in a reckless manner, can absolve themselves of liability. The concept of the fresh start for a debtor must defer to the possibility of a fresh start of the innocent victim.

. . . .

The term reckless generally is understood to mean that the perpetrator of the injury knew of the risk and went ahead with his action anyway. He adverted to the harm. Surely, we do not want to insulate from liability people that conduct themselves in a willful, wanton, or reckless manner as these words are generally understood. It may even be questionable whether we want to discharge a negligent tortfeasor, but my amendment does not address that.

129 Cong.Rec. S 5326 (daily ed. Apr. 27, 1983) (statement of Sen. DeConcini).

30 B.R. at 359.

A December 1983 case reported on this issue involved a judgment against the debtor for a wrongful death action arising out of the debtor's operation of an automobile on the wrong side of the road at an unsafe speed while intoxicated. *Carey, supra.* The Court held that the debt owed to the plaintiff was non-dischargeable, stating:

This court concurs in the *Greenwell* court's analysis of the legislative history of Code § 523(a)(6). Furthermore, the court refuses to believe that when Congress enacted 11 U.S.C.A. § 523(a)(6) (1979) it intended to allow the discharge of an indebtedness for wrongful death occurring as a proximate result of operation of a motor vehicle by a debtor on the wrong side of the road, at an unsafe speed, while intoxicated, who thereafter pleads guilty to a charge of involuntary manslaughter. Further, a state court jury found the defendant debtor guilty of

"gross, wilful and wanton negligence" in the 1970 civil action.

The January 22, 1970, judgment and the evidence at trial support a finding of willful and malicious conduct on the debtor's part. Hence, the judgment indebtedness owing to plaintiff is nondischargeable.

35 B.R. at 898.

In summary, we concur with recent case-law finding that the voluntary act of drinking and then driving in an intoxicated state, as the defendant did in this case, is sufficiently intentional and deliberate to hold the driver responsible for any damage caused by his actions. *Carey, supra; Cloutier, supra; Wooten, supra; Greenwell, supra.* The damage caused by the defendant in this case who drove while intoxicated falls within the meaning of the phrase "willful and malicious injury" under § 523(a)(6). Defendant's intentional drinking "unleashed the unbroken causitive (sic) chain which led to the injury of the plaintiff's vehicle." *Greenwell, supra* at 421. One should be held responsible under the law for the natural outcome of his actions. *Id.* Therefore, we hold that the defendant's indebtedness to the plaintiff is nondischargeable.